IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Elizabeth Barnes,**

        **Plaintiff,**

v.                                                                                    Case No. 05-2264-JWL

**Securitas Security Systems USA, Inc.**
**f/k/a Pinkerton Systems Integration, Inc.;**
**and Burns International Security**
**Services Corporation,**

        **Defendants.**

## MEMORANDUM AND ORDER

    Plaintiff Elizabeth Barnes filed suit against defendants alleging violations of 42 U.S.C. § 1981. This matter is presently before the court on defendants' motion to stay or dismiss action and to compel arbitration (doc. #26). Specifically, defendants move to compel arbitration based on the parties' alleged agreement to arbitrate the types of claims brought by plaintiff. According to defendants, its arbitration program was a condition of plaintiff's employment which plaintiff acknowledged in writing. Plaintiff opposes the motion, arguing that the arbitration agreement is illusory because it allows defendants to unilaterally modify the terms at any time. For the reasons explained below, the court agrees with plaintiff, concludes that no valid arbitration agreement exists between the parties and denies defendants' motion.

*Factual Background*

    In 1999, Securitas Holdings, Inc. acquired Pinkerton Systems Integration, Inc. One year later, Securitas Holdings, Inc. acquired Burns International Security Services Corporation. In

2003, Securitas Holdings, Inc. merged Pinkerton and Burns into the company now known as Securitas Security Systems USA, Inc., which provides security services throughout the United States and the world. Plaintiff was hired by Burns as a security guard in April 2001. At the time of plaintiff's hiring, Burns' company policy was to use Pinkerton's employee handbook, arbitration program and related acknowledgment forms. Thus, when plaintiff began her employment with Burns, she was provided with a copy of Pinkerton's Security Officer Associate Handbook as well as a copy of a brochure entitled "Pinkerton's Arbitration Program" and she signed separate forms acknowledging that she had received the handbook and the arbitration program brochure. After the employees of Pinkerton and Burns were united under the single name of Securitas, plaintiff was given a copy of Securitas' Security Officer Handbook as well as a copy of Securitas' brochure entitled "The Securitas Arbitration Program" and she signed a form acknowledging that she had received both the handbook and the arbitration program brochure.

The "Introduction" to the Pinkerton Security Officer Associate Handbook contains the following paragraph:

> To have the necessary flexibility in the administration of policies, practices and procedures, Pinkerton reserves the right to delete, add to, or otherwise modify policies, practices or procedures. As policies, practices and procedures are modified, updated material will be provided to you. The updated material will supersede the previous information in the Handbook.

The Pinkerton Handbook also discusses in general the arbitration program, states that "any claims or controversies either Pinkerton may have against you or you may have against the Company . . . . must be resolved by arbitration instead of the courts" and refers the reader to "Pinkerton's Arbitration Program" brochure. By signing the Pinkerton Handbook Acknowledgment form,

plaintiff acknowledged that she received "a copy of the Pinkerton Security Officer Associate Handbook, which includes Pinkerton's Code of Business Ethics and Arbitration Program," and indicated her understanding that "the policies in this associate handbook shall govern the terms and conditions of my employment unless expressly modified in writing by the Company." In a separate document, plaintiff acknowledged receipt of and agreement to Pinkerton's Arbitration Program. This acknowledgment form states that "compliance with the Pinkerton Arbitration Program is a condition of my employment with Pinkerton."

The pertinent provisions found in the Securitas materials are similar to those found in the Pinkerton materials. The Securitas Security Officer Handbook contains the following introductory paragraph:

> Securitas reserves the right to terminate employment, or to alter the terms of your employment, including changing your wages, assignments or shifts as business necessitates and may alter any other terms or condition of employment, with or without cause, with or without notice, with the exception of its policy of at-will employment. To have the necessary flexibility in the administration of policies, practices and procedures, we reserve the right to delete, add to or otherwise modify policies, practices or procedures. When modifications and/or changes occur, you will be notified.

The "Foreword" to the Securitas Handbook states that the handbook contains the "general terms and conditions of your employment." The Securitas Handbook discusses in general the arbitration program, states that "any claims Securitas may have against you or you may have against the Company . . . will be submitted to arbitration instead of the courts" and refers the reader to the "Company's Arbitration Program" brochure, a document which details the program but which the employee does not sign. The Employee Handbook Acknowledgment, which plaintiff signed, states

3

that the "Company may modify, supplement, terminate or revise any of the provisions of this Handbook, other than the at will requirement at any time." By signing the acknowledgment form, plaintiff agreed to comply with the policies in the handbook. The Arbitration Program Acknowledgment, which plaintiff also signed, states that compliance with the arbitration program is a condition of employment.

Plaintiff's employment was terminated in May 2004 and she filed suit in this court alleging violations of 42 U.S.C. § 1981. Defendants move to compel arbitration pursuant to the parties' alleged agreement to arbitrate.

*Discussion*

In their motion to compel arbitration, defendants assert that plaintiff unequivocally agreed to arbitrate her claims pursuant to the arbitration program set forth in her employee handbooks, the arbitration program brochures and the acknowledgment forms signed by her. Plaintiff urges that any agreement to arbitrate is illusory because it allows defendants to unilaterally modify the terms at any time. Defendants, in turn, contend that the agreement is not illusory because the handbooks and acknowledgment forms which reserve defendants' right to alter are separate and distinct from the arbitration program brochures and arbitration program acknowledgments which do not reserve such a right; that even if the arbitration program brochures and acknowledgments are not considered separate and distinct, the agreement is still not illusory because defendants must provide notice to employees any time defendants alter any term or condition of employment; that the agreement is not illusory because plaintiff's continued employment, coupled with

4

defendants' promise to arbitrate disputes, is sufficient consideration to support the agreement; and that the agreement is not illusory because the disclaimer of any intention to create a contract found in the handbook applies only to plaintiff's at-will status and not the parties' agreement to arbitrate.

Any analysis of the parties' arguments necessarily begins with the Tenth Circuit's opinion in *Dumais v. American Golf Corporation*, 299 F.3d 1216 (10th Cir. 2002), the most applicable precedent from the Tenth Circuit on the issue of illusory arbitration agreements in the employment context.[1] In *Dumais*, the plaintiff signed two separate arbitration agreements with her employer. One was titled "We Can Work It Out," and the other, the "New Co-Worker Authorization & Acknowledgment Form." 299 F.3d at 1217. The "We Can Work It Out" agreement required the plaintiff to bring all employment-related claims exclusively through the process of binding arbitration. *Id*. The "New Co-Worker Authorization & Acknowledgment Form" bound the plaintiff to the provisions of her employer's employment handbook–a handbook that also contained an agreement to arbitrate employment-related claims. *Id*. One section of the employment handbook declared that the employer reserved the right to change, delete, modify or add to any of the provisions contained in the handbook at its sole discretion, with the express exceptions of employees' at-will status and the arbitration provision. *Id.* However, on the page of the handbook where an employee signs to acknowledge that he or she has read and understands the provisions of the handbook, the employer reserved the right "to amend, supplement, or revise

---

[1]For whatever reason, neither party cites the *Dumais* decision.

everything in the Handbook with the exception of employees' at-will status." *Id*. The handbook, then, contained "inconsistent provisions as to whether it retained the right to unilaterally alter the agreement." *Dumais v. American Golf Corp*., 150 F. Supp. 2d 1182, 1193 (D.N.M. 2001).

In light of these two conflicting provisions, the district court construed the language of the handbook against the employer and held that the arbitration agreement was illusory because the conflicting provisions allowed the employer to unilaterally modify the terms at any time. *Dumais,* 299 F.3d at 1218. The district court, then, denied the employer's motion to compel arbitration. *Id*. The Tenth Circuit affirmed the district court's decision, interpreting the ambiguity created by the conflicting provisions as allowing the employer to change the arbitration provision at will and holding that "that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Id*. at 1219.

The court turns, then, to the arbitration agreements at issue here. The Securitas materials[2] contain language nearly identical to the language that the Circuit found illusory in *Dumais*. The Securitas Security Officer Handbook, which expressly contains the "terms and conditions of employment" including an agreement to arbitrate, specifically reserves defendants' right to alter any term or condition of employment with the exception of the at-will employment policy.

---

[2]Both parties apparently assume that plaintiff would be bound by both the Pinkerton materials as well as the Securitas materials and the briefing contains an analysis of the documents plaintiff received from both companies. It seems to the court, however, that the Securitas materials would supersede the Pinkerton materials as plaintiff received the Securitas materials at a later date and it is undisputed that plaintiff's continued employment was dependent upon her agreement to accept and follow Securitas' policies and procedures. In any event, the court notes that its disposition of defendants' motion would be the same regardless of whether the Pinkerton materials or the Securitas materials governed.

6

Similarly, the Employee Handbook Acknowledgment, which plaintiff signed, states that the "Company may modify, supplement, terminate or revise any of the provisions of this Handbook, other than the at will requirement at any time." By excepting only the at-will employment policy, defendants have retained the right to unilaterally modify or terminate the arbitration program–a condition of employment found in the handbook–at any time. An application of these facts to the Circuit's decision in *Dumais* mandates the conclusion that the agreement is illusory.

Defendants urge that the arbitration agreement is not illusory because the handbook and handbook acknowledgment form which reserve defendants' right to modify conditions of employment are separate and distinct from the arbitration program brochure and the arbitration program acknowledgment which do not reserve such a right. Notably, the employer in *Dumais* advanced this same argument–that "the district court relied too heavily on the Handbook and did not give sufficient weight to the separate 'We Can Work It Out" agreement, which both parties signed." *Id*. at 1219. The Circuit rejected this argument on the grounds that the handbook stated that it was the contract of employment between the employer and the plaintiff and, thus, the handbook controlled over any other document the parties signed. *Id*. Here, the handbook, which expressly governs the terms and conditions of employment, contains an arbitration agreement and incorporates the arbitration program brochure. The handbook also reserves defendants' right to alter any condition of employment (which, of course, would include the agreement to arbitrate) and the handbook acknowledgment form states that defendants may modify any provision of the handbook (which, again, contains an agreement to arbitrate and references the arbitration program brochure) other than the at-will policy at any time. The handbook and the handbook

7

acknowledgment form, then, are clearly not separate and distinct from the arbitration program. This argument is rejected. *Cf. Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543-44 (4th Cir. 2005) (arbitration agreement was separate and distinct where the agreement was set forth in a comprehensive six-page document which the employee signed and agreement, on its face, unambiguously required both parties to arbitrate); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir. 1997) (arbitration clause constituted separate and enforceable contract where clause itself was signed by employee and clause, on its face, required parties to arbitrate).

Defendants next contend that even if the arbitration materials are not separate and distinct from the handbook materials, the agreement is nonetheless not illusory because defendants are required to provide notice to employees if conditions of employment are altered. Indeed, several courts have held that an arbitration agreement is not illusory if the employer retains the right to alter or amend only after putting the change in writing, providing a copy to employees and allowing employees to accept the change by continuing employment. *See, e.g.*, *Blair v. Scott Speciality Gases*, 283 F.3d 595 (3rd Cir. 2002); *Gratzer v. Yellow Corp.*, 316 F. Supp. 1099, 1101-02 (D. Kan. 2004). These cases are easily distinguishable from the facts here. Nothing in the Pinkerton materials or the Securitas materials requires defendants to give prospective notice of any change in conditions of employment. In fact, the Securitas handbook expressly states that changes may be made "with or without notice" to employees. At the most, defendants' materials promise that employees will be notified of changes after those changes occur. Defendants have directed the court to no cases, and the court has found none, holding that subsequent notice of changes is sufficient to salvage an otherwise illusory agreement to arbitrate.

Defendants maintain that the arbitration agreement is not illusory because plaintiff's continued employment is sufficient consideration to support her agreement to arbitrate. The Circuit's opinion in *Dumais*, however, speaks to that argument as well. In *Dumais*, the district court held not only that the agreement was illusory but that the agreement lacked sufficient consideration because the employee signed the agreement nearly three months after she began her employment. *Dumais*, 150 F. Supp. at 1193-94. On appeal, the employer challenged both of those conclusions. *Dumais*, 299 F.3d at 1218. The Circuit found no need to address whether the agreement was supported by sufficient consideration in light of its conclusion that the agreement was illusory and it expressed no views as to that argument. *Id*. at 1220. Based on *Dumais*, then, the court here declines to address this argument, having concluded that the agreement is illusory.[3]

Finally, defendants contend that the arbitration agreement is not illusory because the disclaimer of any intention to create a contract found in the handbook applies only to plaintiff's at-will status and not the parties' agreement to arbitrate. This argument is rejected as the court, in concluding that the agreement to arbitrate is illusory, relies not on the disclaimer of an intent to create a contract but solely on the defendants' reservation of the right to alter the agreement at any time without notice.

For the foregoing reasons, the court concludes that the parties do not have an enforceable

---

[3]In support of their consideration argument, defendants rely on this court's opinion in *Durkin v. CIGNA Property & Casualty Corp*., 942 F. Supp. 481 (D. Kan. 1996). That case, however, is easily distinguished from the facts presented here and in *Dumais*. In *Durkin*, the arbitration agreement was not illusory and the employer did not retain the right to modify the arbitration agreement at will. *See Durkin*, 942 F. Supp. at 483-84, 488.

agreement to arbitrate and defendants' motion to compel arbitration is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to stay or dismiss action and to compel arbitration (doc. 26) is denied.

**IT IS SO ORDERED.**

Dated this 6th day of January, 2006, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge