IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Elizabeth Barnes,**

  **Plaintiff,**

v.                 **Case No. 05-2264-JWL**

**Securitas Security Systems USA, Inc.,**

  **Defendant.**

## MEMORANDUM & ORDER

  Plaintiff Elizabeth Barnes filed suit against defendant alleging violations of 42 U.S.C. § 1981 arising out of her employment. Specifically, plaintiff alleges that defendant paid plaintiff lower wages than it paid similarly situated employees outside the protected class; that defendant treated plaintiff differently based on her race by disciplining plaintiff for her poor communication skills and by demanding that plaintiff receive additional training to improve her communication skills; and that defendant terminated plaintiff's employment based on her race. This matter is presently before the court on defendant's motion for summary judgment on all claims (doc. 54). As will be explained, the motion is granted in part and denied in part with respect to plaintiff's wage discrimination claim; is granted with respect to plaintiff's disparate treatment claims; and is denied with respect to plaintiff's discriminatory discharge claim.

**I.**  **Facts**

  The following facts are uncontroverted or related in the light most favorable to plaintiff,

the nonmoving party. During the time relevant to plaintiff's claims, defendant Securitas Security Systems USA, Inc. provided security services at a warehouse and distribution center owned by Foot Locker and located in Junction City, Kansas. Plaintiff was employed by defendant at the Foot Locker facility in Junction City. While it is unclear when plaintiff began her employment with defendant, she was promoted to the Site Supervisor position in August 2002.[1] Although the previous Site Supervisor, Ricky Hanson, a white male, was paid $11.00 per hour, defendant did not pay plaintiff, an African-American female, this wage. Moreover, defendant did not pay plaintiff the hourly rate otherwise required by the promotion ($9.50 per hour) until one month after she had been in the position. In November 2002, plaintiff resigned her position as Site Supervisor in light of defendant's refusal to pay her the same hourly rate that it had paid to Mr. Hanson. In September 2003, Jim Michaud, the supervisor of defendant's operations at the Foot Locker distribution center, asked plaintiff to return to the Site Supervisor position. Plaintiff accepted the promotion but, according to plaintiff, defendant did not pay plaintiff the hourly wage required by the promotion at that time ($11.00 per hour) until sometime in October 2003.

During plaintiff's second tenure as Site Supervisor, plaintiff was required to work closely with Mr. Michaud and Mike Croudep. Mr. Croudep, an African-American male, was employed by Foot Locker as the Loss Prevention Manager at the Junction City distribution center and he was the client contact who worked directly with defendant in providing security services for the

---

[1] Neither party directs the court to evidence explaining the responsibilities of a Site Supervisor. Moreover, defendant contends that plaintiff did not become Site Supervisor in August 2002, but only became Acting Site Supervisor. This distinction, while perhaps significant at trial, is not relevant to the resolution of defendant's motion.

distribution center. As the Site Supervisor, plaintiff was required to communicate clearly and professionally with Mr. Croudep. It is undisputed that Mr. Croudep was not satisfied with plaintiff's performance in the Site Supervisor position and he made several complaints to Mr. Michaud about plaintiff's communication skills, including both plaintiff's written and verbal communication skills. According to plaintiff, Mr. Croudep told another member of defendant's management team that plaintiff "was an embarrassment to the black race." Plaintiff further contends that Mr. Michaud was aware that Mr. Croudep had made this statement.

In the Spring of 2004, Mr. Croudep demanded that defendant remove plaintiff from the Site Supervisor position. According to defendant, Mr. Michaud convinced Mr. Croudep to allow plaintiff to receive additional training to improve her communication skills and remain in the position. Thus, on May 1, 2004, Mr. Michaud met with plaintiff and explained Mr. Croudep's concerns about plaintiff's communication skills. He further explained that plaintiff would have to attend additional training to improve her skills so that she could remain in the Site Supervisor position. The May 1, 2004 meeting between plaintiff and Mr. Michaud was recorded in a Counseling and Corrective Action Report. Later that day, plaintiff sent an e-mail to Mr. Michaud in which she expressed her desire to resign from the Site Supervisor position. According to plaintiff, she withdrew her resignation at some point in the days following May 1, 2004 and expressly advised Mr. Michaud that she wanted to remain in the position. According to defendant, Mr. Michaud, by the time plaintiff expressed a desire to remain in the position, had already accepted her resignation and had started the process of selecting a new Site Supervisor. Plaintiff, however, maintains that Mr. Michaud had done nothing in the way of selecting a new

Site Supervisor at the time she advised him that she wanted to remain in the position.

On May 14, 2004, Mr. Michaud informed plaintiff that he had placed Mark Morgan, a white male, in the Site Supervisor position. According to defendant, plaintiff then told Mr. Michaud that she was going to contact members of Foot Locker's management team to complain about her removal from the Site Supervisor position. Defendant asserts that Mr. Michaud, at that point, terminated plaintiff's employment based on her threat to contact Foot Locker–an act of insubordination and a violation of company policy. Plaintiff, however, testified that Mr. Michaud advised her that he had replaced her with Mark Morgan and that her employment was terminated and it was only upon learning that her employment had been terminated that she advised Mr. Michaud that she was planning to contact members of Foot Locker's management team.

## II.     **Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if, under the applicable

substantive law, it is "essential to the proper disposition of the claim." *Id*. (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* (citing Fed. R. Civ. P. 56(e)). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1); *see also Kaster v. Safeco Ins. Co. of Am.*, 2003 WL 22854633, at *2 (10th Cir. Dec. 3, 2003) (affirming the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's

employment decisions were age-related); *Young v. White*, 2003 WL 21940941, at *1-2 (10th Cir. Aug. 14, 2003) (affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

### III.    Plaintiff's Wage Discrimination Claim

Plaintiff asserts in the pretrial order a claim of wage discrimination under 42 U.S.C. § 1981. In essence, plaintiff complains about three separate acts in connection with this claim. First, she alleges that when she first assumed the Site Supervisor position in August 2002, defendant refused to pay her the same wage ($11.00/hour) as it had paid Ricky Hanson, a white male and the previous Site Supervisor. Second, she alleges that defendant delayed giving plaintiff the raise to which she was otherwise entitled when she assumed the Site Supervisor position in August 2002 (to $9.50/hour) until one month after she assumed the position. Finally, she alleges that defendant, after plaintiff returned to the Site Supervisor position in September 2003, delayed giving plaintiff the raise to which she was entitled at that time (to $11.00/hour) until six weeks after she returned to the position. The court addresses each of plaintiff's challenges in turn.

*A.    Ricky Hanson*

Plaintiff asserts that defendant, after plaintiff assumed the Site Supervisor position in August 2002, refused to pay plaintiff the same hourly rate that Ricky Hanson, the previous Site Supervisor, had been paid. While defendant concedes the pay disparity between Mr. Hanson and

6

plaintiff, defendant states that the reason for the disparity is that Mr. Hanson, in contrast to plaintiff, had superior credentials and prior relevant experience at the time he assumed the Site Supervisor position. Plaintiff does not dispute this evidence anywhere in her papers. Thus, even assuming she could establish a prima facie case of wage discrimination on this issue, *see Amro v. Boeing Co.*, 232 F.3d 790, 798 (10th Cir. 2000) (as part of a plaintiff's prima facie burden on wage discrimination claim, she must show that she was paid less, or given a lesser raise, than other similarly situated employees outside the protected class), she has not come forward with any evidence suggesting that defendant's proffered reason for the disparity is pretextual. *See Randle v. City of Aurora*, 69 F.3d 441, 455 (10th Cir. 1995) (once employer asserts non-discriminatory reason for pay differential, burden falls on plaintiff to show that the proffered reason is pretextual).[2] Summary judgment, then, is granted to the extent plaintiff's wage discrimination claim is based on the wages earned by Ricky Hanson.

*B.     Delayed Raises*

With respect to plaintiff's assertions that defendant, on the basis of plaintiff's race, delayed giving plaintiff the pay raises to which she was entitled, defendant moves for summary judgment based solely on the fact that, according to defendant, its payroll records accurately reflect that plaintiff received her raises in a timely fashion and are entitled to more weight than

---

[2]Although *Amro* and *Randle* are Title VII cases and plaintiff here has brought her claims only under section 1981, it is well established that the elements of each of plaintiff's claims in this case are the same whether those claims are asserted under Title VII or section 1981. *See Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005).

plaintiff's memory and/or belief (reflected in her deposition testimony) as to when she received her raises. While a jury is certainly entitled to credit defendant's payroll records over plaintiff's memory concerning the timing of her raises, the court cannot, as a matter of law, determine that defendant's payroll records trump plaintiff's testimony, particularly when plaintiff was not presented with the payroll records during her deposition and was not asked to compare those records with her memory. Defendant's motion for summary judgment on plaintiff's claim concerning delayed raises is denied.

### IV.    **Plaintiff's Disparate Treatment Claims**

In the pretrial order, plaintiff also asserts disparate treatment claims based on the "Counseling and Corrective Action Report" that she received from Mr. Michaud on May 1, 2004 and defendants' development of a "specialized training program" to improve plaintiff's communication skills. To establish a prima facie case of disparate treatment, plaintiff must establish, among other things, that she suffered an adverse employment action. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). In its motion for summary judgment, defendant asserts that summary judgment is warranted on plaintiff's disparate treatment claims because she cannot establish that she suffered an adverse employment action in connection with the May 1, 2004 counseling or the additional training that defendant planned to provide to plaintiff. The court agrees and grants summary judgment on these claims.

With respect to the May 1, 2004 counseling that plaintiff received, the record is devoid of any evidence suggesting that this counseling had any effect on plaintiff's employment status.

*Compare Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1224-25 (10th Cir. 2006) (placement on performance improvement plan was not an adverse employment action where placement had no immediate effect on plaintiff's employment status and she was presented with clear goals to achieve her continued employment) *with Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998) (written warning constituted adverse employment action where the record indicated that the more warnings an employee received, the more likely he or she would be terminated for a further infraction). There is no evidence that the May 1, 2004 counseling factored into the decision to terminate plaintiff's employment, resulted in any loss of pay to plaintiff, or had any other impact whatsoever on plaintiff's employment. Summary judgment, then, is appropriate on this claim. *See Medina v. Income Support Div., State of New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005) (warning letter did not constitute adverse employment action where letter did not adversely affect the terms or conditions of the plaintiff's employment; letter did not affect the likelihood that the plaintiff would be terminated, did not undermine the plaintiff's current position and did not affect the plaintiff's future employment opportunities).

Similarly, plaintiff has not come forward with any evidence that defendant's plan to provide additional training to plaintiff constituted an adverse employment action. Plaintiff concedes that "nothing more was ever mentioned to plaintiff in regard to such training" after Mr. Michaud first mentioned the additional training in the May 1, 2004 counseling session with plaintiff. It is undisputed, then, that the additional training did not occur prior to the termination of plaintiff's employment. Moreover, there is no evidence that plaintiff's termination was

related in any way to plaintiff's refusal to participate in such training. In such circumstances, the "proposed" training cannot be said to have altered plaintiff's employment status in any way. *See Haynes*, 456 F.3d at 1222 ("Only 'acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits' will rise to the level of an adverse employment action."). Summary judgment is granted on this claim.

## V.     Plaintiff's Discharge Claim

Plaintiff claims that defendant terminated her employment based on her race. As plaintiff has no direct evidence of discrimination, her claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Antonio v. The Sygma Network, Inc.,* 458 F.3d 1177, 1181 (10th Cir. 2006). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. *See id.* If she establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for taking the adverse employment decision. *See id.* If defendant offers a legitimate, nondiscriminatory reason for its action, summary judgment against plaintiff is warranted unless she shows that there is a genuine issue of fact as to whether defendant's reason is pretextual. *See id.*; *Medina v. Income Support Div., State of New Mexico*, 413 F.3d 1131, 1136 (10th Cir. 2005).

Defendant moves for summary judgment on this claim, contending first that plaintiff cannot establish a prima facie case of discriminatory discharge. Defendant also contends that

10

plaintiff cannot show that defendant's asserted legitimate, nondiscriminatory reason for terminating plaintiff's employment is pretextual. As explained more fully below, the court concludes that plaintiff has shown the existence of genuine issues of material fact with respect to her prima facie case of discriminatory discharge and has also shown a genuine issue of material fact as to whether defendant's proffered reason for terminating plaintiff's employment is pretextual. The court, then, denies defendant's motion for summary judgment on this claim.

*A.     Plaintiff's Prima Facie Case of Discriminatory Discharge*

In support of its motion for summary judgment, defendant contends that plaintiff cannot establish the second prong of her prima facie case of discriminatory discharge–a prong that requires plaintiff to show that she was qualified for her job. *See Antonio*, 458 F.3d at 1183 n.3. According to defendant, plaintiff cannot establish that she was qualified for the Site Supervisor position because of her poor communication skills and because Mr. Croudep demanded plaintiff's removal from the position in light of the manner in which plaintiff performed her duties. Taking all inferences from these facts in the light most favorable to plaintiff, however, a reasonably jury could conclude that plaintiff was minimally qualified for the Site Supervisor position, particularly in light of plaintiff's testimony that defendant "begged" her to take the Site Supervisor position in August 2002 and then asked her to return to the position in September 2003 after she had voluntarily resigned the position the previous year. *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192-94 (10th Cir. 2000) (relevant inquiry at the prima facie stage is not whether an employee is able to meet all the objective criteria adopted

11

by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job sought; if an employee is able to introduce such evidence, she has satisfied her prima facie burden of demonstrating that she does not suffer from an "absolute or relative lack of qualifications"); *Burrus v. United Tele. Co. of Kansas*, 683 F.2d 339, 341-42 (10th Cir. 1982) (employer may not defeat a plaintiff's prima facie case by asserting that the plaintiff failed to satisfy subjective qualifications).

In light of plaintiff's evidence, the court concludes that plaintiff has made the de minimis showing required for a prima facie case of discriminatory discharge. *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (describing a plaintiff's prima facie burden as "de minimis"). Summary judgment on this issue is denied.

*B.    Plaintiff's Showing of Pretext with Respect to her Discharge Claim*

As plaintiff has established a prima facie case for purposes of defendant's motion for summary judgment, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment. According to defendant, it terminated plaintiff's employment based solely on plaintiff's threat to contact members of Foot Locker's management team–an act of insubordination and a violation of company policy. Plaintiff concedes that defendant has met its burden of production and, thus, the burden shifts back to plaintiff to demonstrate that defendant's proffered reason is pretext. *See Antonio v. The Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). To show that an employer's proffered nondiscriminatory reason for an employment action is pretextual, "a plaintiff must produce

evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 1183 (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 490 (10th Cir. 2006)).

Mr. Michaud testified that plaintiff, on the evening of May 14, 2004, left a voice mail message for Mr. Michaud in which plaintiff expressed her intent to contact Foot Locker management to discuss her removal from the Site Supervisor position. According to Mr. Michaud, he immediately returned plaintiff's phone call and directed her not to speak with Foot Locker management. Mr. Michaud testified that plaintiff continued to insist that she would contact Foot Locker management despite Mr. Michaud's direction that she not do so and, at that point, Mr. Michaud advised plaintiff that her employment was terminated. Plaintiff, on the other hand, testified that she did not express any intention to contact Foot Locker management until after Mr. Michaud advised her that her employment was terminated and that he had placed Mark Morgan in the Site Supervisor position.

Defendant contends that plaintiff's testimony fails to create a genuine issue of fact as to whether defendant's proffered reason is unworthy of belief and, in fact, suggests that plaintiff's testimony demonstrates the truthfulness of defendant's proffered reason because plaintiff admits that she threatened to contact Foot Locker management. The court disagrees. While plaintiff admits that she threatened to contact Foot Locker management, her testimony concerning the timing of this threat is highly significant and is sufficient to cast doubt on defendant's proffered

13

reason for terminating plaintiff's employment. For if plaintiff's testimony is credited and she did not threaten to contact Foot Locker until after Mr. Michaud terminated her employment, then a jury could reasonably conclude that defendant did not, in fact, terminate plaintiff's employment based on her threat to contact Foot Locker. In other words, plaintiff's testimony concerning the sequence of events and the timing of her threat raises genuine issues of material fact about whether Mr. Michaud terminated plaintiff's employment based on her threat to contact Foot Locker or whether he terminated her employment for some other reason and then used her subsequent threat as an excuse to justify his earlier (and perhaps unlawful) decision. *See Metzler v. Federal Home Loan Bank of Topeka*, ___ F.3d ___, 2006 WL 2733112, at *11-12 (10th Cir. Sept. 26, 2006) (evidence that decisionmaker did not honestly believe reason articulated for adverse employment action converts articulated reason into pretext) (citing cases). For these reasons, defendant has not shown that it is entitled to summary judgment on plaintiff's discharge claim and a trial is required.[3]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment on all claims (doc. 54) is granted in part and denied in part.

---

[3] In light of the court's conclusion that plaintiff's testimony, standing alone, is sufficient to raise a triable issue on pretext, the court declines to consider at this juncture the significance, if any, of the remaining evidence plaintiff has set forth in support of her pretext argument, including defendant's alleged unfavorable treatment of other African-Americans; Mr. Croudep's alleged racial animus against plaintiff and what affect that animus may have had on Mr. Michaud's termination decision; and what role, if any, Mr. Croudep played in the decision to terminate plaintiff's employment.

**IT IS SO ORDERED.**

Dated this 16th day of October, 2006, at Kansas City, Kansas.

                                          s/ John W. Lungstrum
                                          John W. Lungstrum
                                          United States District Judge